# Parsons & Loake
## v.
## Tom C. Ponting.

*Partnership—Sale of Partnership Property by one Partner—Attempt to Apply Part of Purchase Price on Debt Due Vendee by Selling Partner—Alleged Ratification by Other Partner—Insufficient Evidence.*

In an action brought by a firm to recover part of the purchase price of certain cattle sold to the defendant by one partner, where the defense was that it had been agreed between the vendee and the partner making the sale that part of the purchase price should be applied on a debt due from such partner to the vendee, and that the other partner had ratified this agreement, *held*, that there was not enough evidence to warrant a finding by the jury that such a ratification had been made.

[Opinion filed April 11, 1892.]

Appeal from the Circuit Court of Christian County; the Hon. J. J. Phillips, Judge, presiding.

In February, 1887, Parsons & Loake entered into a partnership in the business of raising, buying and selling stock, their place of business being the home farm of Parsons, in Clay County. When the partnership was formed, Loake, as a part of the capital contributed by him, put into the firm eight head of thorough-bred Hereford cattle, which he had purchased of the appellee for the sum of $2,200 and for which the appellee held the individual note of Loake. In the winter of 1887–8 Parsons & Loake sent 130 head of cattle to Christian County, where the appellee lives, to be wintered or sold, and on the 13th day of February, 1888, these cattle were sold by Loake for the firm to the appellee for the total sum of $3,700. Appellee executed his note to the firm for $2,700, and contends that by agreement between himself and Loake the remaining $1,000 due for the cattle was to be credited on the debt due him from Loake for the Hereford cattle. On the 12th day of May, 1888, Parsons, acting for the firm, sold the note for $2,700, and

the appellee subsequently paid it.   It is not contended that
Parsons knew of this alleged agreement when it was made,
or that he ever expressly consented to it, but appellee insists
that the sale of the note for $2,700 by Parsons and the
statements made in a letter written by Parsons to the appel-
lee, together with an alleged failure on the part of Parsons
to promptly repudiate the alleged contract of Loake, con-
stituted a ratification of the act and agreement of Loake.
The letter referred to is as follows:

FLORA, May 3, 1888.

MR. PONTING.

*Dear Sir:*—I am much disappointed that Mr. Loake was
obliged to return without buying any stock and has lost his
time and expenses.   I can't see why you did not and should
not have given the $1,000 note, as you promised Mr. Loake
in case I was not satisfied to let that $1,000 go on Mr.
Loake's private debt.   If we had the money I would be
glad to oblige you, and if Mr. Loake had done as I wished,
instead of you, last year, we should have saved thousands of
dollars.   As it is, we have not money to buy a little stock,
and hence I can not consent to furnish money to pay Mr.
Loake's private debt, and hope you will send us the note, as
agreed on, so we can get it discounted.   We are like all the
farmers; nobody is paying anything; we must all be patient,
and with a good crop all will change.   Hoping for an early
visit from you and Mrs. Ponting, I am,

Very truly yours,

LEWIS B. PARSONS.

Some effort was made on the part of the appellee to show
that the firm of Parsons & Loake ought to be held liable
for the amount due him for the Hereford cattle, as being a
debt of the firm, not of Loake individually.   The evidence,
however, clearly establishes the fact to be that the appellee
sold the cattle to Loake, accepted his individual note for
them, and that they then knew that Loake bought them to
put into the capital of the firm as his contribution to that
capital and against an equal amount contributed by Parsons.
Upon this point the jury found against the appellee, for it

appears from the bill of exceptions that the finding of the jury was upon the ground that Parsons had ratified the arrangement made by Loake and the appellee for the application of $1,000 remaining unpaid of the price of the firm's cattle upon the individual debt of Loake. The action was assumpsit brought by Parsons & Loake against appellee to recover the $1,000 unpaid upon the sale of the cattle. The appellee pleaded the general issue and a plea of set-off in which he set up the alleged indebtedness of Parsons & Loake to him for the Hereford cattle. The jury returned a verdict for the appellee and the court awarded judgment upon it from which this appeal is prosecuted.

Messrs. RUFUS COPE and J. C. McBRIDE, for appellant L. B. Parsons.

Messrs. TAYLOR & ABRAMS and DRENNAN & HOGAN, for appellee.

MR. JUSTICE BOGGS. When the appellee parted with the Hereford cattle he knew that Parsons and Loake were intending to form a partnership, and that Loake was buying the cattle for the purpose of putting them in as part of his contribution to the capital of the firm of Parsons & Loake, as against a like contribution in value to be made by Parsons. The appellee was instrumental in bringing about the formation of the partnership. He went with Loake from Christian County, where they both lived, to the home of Parsons in Clay County, to aid in bringing it about. He introduced Loake to Parsons and recommended him as a desirable partner, and when Parsons and Loake had agreed upon terms of partnership as to the details of which the appellee was fully advised, he sold the Hereford cattle to Loake and accepted his individual note in payment for them, knowing at the same time that the cattle were to be accepted by Parsons & Loake as an individual contribution of Loake to his share of the capital of the firm. There is no ground upon which to base a contention that the indebtedness for these cattle was legally or equitably that of the firm of Parsons &

Loake. The appellee admits that he bought of Parsons & Loake, through Loake and in the absence of Parsons, 130 head of cattle belonging, as appellee then knew, to the firm, at the price of $3,700. He gave his note for $2,700, payable to the firm, and contends that the remainder, $1,000, was by agreement between himself and Loake to be applied as a credit upon the note he held against Loake for the Hereford cattle. That the assets and property of the partnership could not, without the consent of Parsons, be thus appropriated to the liquidation of the individual debt of Loake, is a rule of law so elementary that a citation of authorities in its support is wholly unnecessary. The cattle at the time they were purchased by appellee were, and for some time before had been, in Christian County, in the charge of Loake. Parsons lived in Clay County. He was not present when the sale was made, and it is not claimed that he knew anything about it at the time of the transaction. It is, however, contended that Parsons ratified the application of the $1,000 to the credit of Loake, first, by not promptly repudiating it; second, by collecting the $2,700 note given by the appellee to the firm of Parsons & Loake; third, by statements to be found in his letter of May 3, 1888, set out in the statements of the case in these reports.

The duty of repudiating the alleged agreement could only arise after Parsons knew of it. It is not shown that either the appellee or Loake or any one else gave Parsons any notice or information whatever about the matter, nor is there any evidence charging Parsons with knowledge of the fact, except it be the letter of May 3d, written by him to the appellee. From this letter it is clear that Parsons had not then heard that Loake and the appellee had agreed that the $1,000 was to be credited upon Loake's note, but he then evidently understood that Loake and the appellee had talked about the matter, and had agreed that it should be so done if his (Parson's) consent could be had, and that if he did not consent the appellee would give his note to the firm for the $1,000 remainder due on the cattle. When Parsons learned this much is not disclosed. We only know

that he positively declined to yield his consent and demanded that the appellee comply with the contract as he understood it; that is, give his note to the firm for the $1,000 remaining unpaid upon the cattle. The burden of proving a ratification was upon the appellee, and if he relies upon an inference of ratification arising from an alleged failure of prompt repudiation, the burden of proving *laches* in this respect also rests upon him. Before such *laches* can be imputed to Parsons it must appear by direct or circumstantial proof that after he was informed of the facts he did not with reasonable dispatch act upon such knowledge. He acted in May and there is no proof that he had before such action been advised of the alleged contract between Loake and the appellee. Nor do we regard the assignment by Parsons of the $2,700 note as an affirmance or ratification, for from the evidence it seems clear that at the time he sold the note he understood that the appellee was to pay the $1,000 remaining due on the cattle to the firm unless he (Parsons) voluntarily consented to its application as a credit upon the debt of Loake, and this he notified the appellee he would not consent to before he sold the note. Upon the question of ratification, we think the appellee failed, and that in this respect the finding of the jury was manifestly against the weight of the evidence. Indeed, we do not think there was sufficient evidence tending to establish a ratification to justify an instruction to the jury concerning it.

For the reasons thus expressed the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*